JOANN A. PEARCY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pearcy v. Commissioner
Docket No. 3462-91
United States Tax Court
T.C. Memo 1993-499; 1993 Tax Ct. Memo LEXIS 509; 66 T.C.M. (CCH) 1168; October 28, 1993, Filed *509 Decision will be entered for respondent. For petitioner: Dee Wampler. For respondent: Robert M. Fowler COLVIN
COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: Respondent determined deficiencies in and additions to petitioner's income tax as follows: Additions to Tax Year
Deficiency
[1] Sec. 6653(b)(1) Sec. 6653(b)(2)
Sec. 6661(a)
1980
$ 1,119.00  $ 559.50  --
--  1981
15,625.00
7,812.50
--
--  1982
15,809.75
7,904.88
[2]
$ 3,952.44
1983
12,982.05
6,491.03
[2]
3,245.51
1984
12,796.00
6,398.00
[2]
3,038.75
Respondent determined that in the years in issue petitioner had unreported income totaling $ 175,937.04 which respondent contends petitioner embezzled from her former employer. Petitioner agrees that she received the funds, but contends that she found a cash hoard of her father's in 1978, kept the funds at her home beginning in November 1978, and began lending funds to her employer about June 1980. Petitioner contends that the amounts respondent determined *510 to be unreported income were repayments of the loans. Petitioner's brother and daughter dispute her cash hoard claim and her former employer disputes her loan claim. After concessions, the issues to be decided are: 1. Whether petitioner failed to report $ 175,937.04 of income she received from her employer during the years in issue. We hold that she did. 2. Whether petitioner is liable for additions to tax for fraud under section 6653(b). We hold that she is. 3. Whether petitioner is liable for the addition to tax for substantial understatement of tax under section 6661. We hold that she is. 4. Whether a city of Shreveport record summarizing petitioner's father's employment history was properly admitted into evidence. We hold that it was. Section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT 1. Petitioner
Petitioner resided in Springfield, Missouri, when she filed the petition in this case. Petitioner filed joint income tax returns for 1980, 1981, 1982, and 1983, and filed as married filing separately for 1984. She and her first husband *511 had three children. They divorced in 1964. Petitioner continued to raise her three children. Petitioner married Bill Pearcy in 1979. He was an accountant with the Springfield school system. Bill Pearcy died in 1987. Petitioner worked at an accounting firm in the early 1970s for about 2 years. She was an accountant for various employers in the Springfield area such as Drury College, Bass Pro Shops, F & R Oil Co., and Ozark Grocery. In 1986 or 1987, she developed a business which marketed teddy bears. She had at least three employees and sales in about 35 States. Petitioner grew up in Shreveport, Louisiana. Petitioner's parents lived in a small bungalow there until they died. Petitioner's mother occasionally worked outside her home. For example, she worked at an ammunition plant during World War II and later at a drive-in theater. Petitioner's mother died in 1976. She left a $ 10,366.02 estate to petitioner's father. Her mother's estate included a one-half interest in the family home valued at $ 9,250; a one-half interest in the family car, a 1956 Chevrolet valued at $ 200; and $ 3,000 cash on hand or on deposit. Petitioner's father worked at a produce company, a company *512 that installed guns along the American coast during World War II, on an assembly line, and at a worm farm. He worked for Shreveport's Parks Department from 1954 until he retired in 1964. His salary ranged from about $ 22.50 per week to $ 340 per month. After he retired, petitioner's father received a pension of $ 34.60 per month until he died in October 1978. Petitioner's brother handled most of the arrangements for probate of his and petitioner's parents' estates. In January 1979, petitioner and petitioner's brother certified that the probate inventories were correct and that no property had been transferred to avoid taxes. According to the probate inventory, the value of petitioner's father's estate was $ 13,216.25, half of which passed to petitioner and the other half to her brother. Her father's estate included: A one-half interest in the family home valued at $ 9,250; a one-half interest in the family car, a 1956 Chevrolet valued at $ 200; and $ 3,589.95 in a bank account. On February 16, 1979, the probate attorney filed an amended inventory for petitioner's father which included a newly discovered second bank account with $ 473.29. During the years in issue, petitioner *513 and her husband obtained at least 11 loans from Empire Bank as follows: Loan
Interest
Date
Amount
Rate (%)
Mar. 28, 1980
$ 6,000 15.40
Mar. 13, 1981
5,470
15.82
Oct. 20, 1981
3,000
16.60
Mar. 4, 1982
3,900
16.25
May 14, 1982
2,800
17.90
Aug. 30, 1982
11,405
15.70
Nov. 29, 1982
3,000
16.75
Aug. 3, 1983
8,000
13.19
Sept. 6, 1983
3,000
14.99
June 27, 1984
1,500
14.40
Oct. 3, 1984
1,558
15.00
Total 49,633
Petitioner reported $ 41.65 in interest income on her 1983 income tax return and no interest on her returns for the other years in issue. 2. Ken's Appliance Center, Inc.
Petitioner worked as a bookkeeper for Ken's Appliance Center, Inc. (Ken's Appliance), from June 1980 to August 1984. Ken and Beverly Spellman owned Ken's Appliance. Ken's Appliance sold large appliances such as ranges, washers, dryers, refrigerators, and small appliances. Before working at Ken's Appliance, petitioner knew the Spellmans because they lived in the same neighborhood and she had bought appliances from the store. Petitioner was the main bookkeeper for Ken's Appliance. She prepared and maintained the ledgers, accounts receivable and payable, and inventory *514 control. Beverly Spellman tallied daily sales. Ken's Appliance retained a certified public accountant who acted as a financial adviser. He reviewed business records that petitioner prepared but he did not maintain the books. Petitioner encouraged Beverly Spellman to be more active in the business' bookkeeping and accounting. Petitioner prepared checks about twice a month and presented them to the Spellmans without accompanying paperwork. Only the Spellmans were authorized to sign business checks. Ken or Beverly Spellman reviewed and signed the checks. Petitioner occasionally left the payee line blank when she presented it for signature. Petitioner reported wages from Ken's Appliance as follows: 1980
$ 6,837.80 1981
12,388.80
1982
11,946.88
1983
13,516.80
1984
7,955.20
Petitioner received and deposited in her bank account $ 175,937.04 in checks from Ken's Appliance from 1980 to 1984, in addition to the amounts she reported as wages. She deposited 64 checks which total the following amounts per year: 1980
$ 4,036.04  1981
50,290.97
1982
46,485.03
1983
40,625.00
1984
34,500.00
Total
175,937.04
Ken Spellman signed 9 of those checks and Beverly *515 Spellman signed 55. Ken's Appliance had a "one-write" system for check recordkeeping. The checks had a carbon beneath the payee's name. When a check was written, the carbon imprinted the entity onto the check register. Petitioner left the payee blank on checks that she intended to pay to herself. Petitioner recorded the checks she made payable to herself in the check register as paid to inventory suppliers for accounts payable, such as General Electric, ITT, Borg Warner, and Hoover. The canceled checks that petitioner made payable to herself were missing from the company's other canceled checks. 3. Prior Litigation Relating to Petitioner's Receipt of $ 175,937.04 From Ken's Appliance
In September 1984, the Greene County, Missouri, prosecutor's office charged petitioner with five counts of felony theft for embezzlement from Ken's Appliance. These charges were later dismissed because a grand jury indicted petitioner on similar charges in January 1985. These charges were dismissed without trial in 1987 at the request of the county prosecutor. The Spellmans sued petitioner and her husband for embezzlement in December 1984. The Spellmans dismissed the suit in June 1989. *516 In 1989, a Federal grand jury indicted petitioner on three counts of Federal income tax evasion for 1982, 1983, and 1984. Petitioner was acquitted of these charges in a trial by jury in August 1989. 4. Petitioner's Statements to Investigators
Respondent began investigating petitioner in July 1987. On July 30, 1987, petitioner told respondent's investigators that she made cash loans to the Spellmans as follows: Date
Amount
June 24, 1980
$ 15,000 Jan. 23, 1981
35,000
Nov. 24, 1981
40,000
Feb. 10, 1982
30,000
Nov. 18, 1982
40,000
Nov. 29, 1983
20,000
Total 180,000
Petitioner told the agents that she generally required the Spellmans to reduce the loan balance to about $ 2,000 before she made a new loan. She said that she made the loans from a large cash hoard which she found in a safe in her parents' house. Petitioner told the agents that her daughter would corroborate her cash hoard claim. Petitioner's daughter initially told the agents that she and petitioner brought a safe back from petitioner's parents' home in Shreveport after petitioner's father died. Petitioner's daughter later retracted her statement and gave respondent's agent an affidavit *517 which said that she had not gone to Shreveport. She testified in petitioner's criminal trial that she had neither gone to Shreveport nor seen substantial sums of money at her grandparents' home. OPINION 1. Unreported Income or Loan Payment
Respondent determined that petitioner received but failed to report $ 175,937.04 from Ken's Appliance during the years in issue. Petitioner bears the burden of proving that respondent's determination is incorrect. Rule 142(a). Petitioner does not dispute that she received the $ 175,937.04, but contends that it was a repayment of loans that she made to Ken Spellman. Repayment of loan principal is generally not taxable income to the lender. Theodore v. Commissioner, 38 T.C. 1011, 1040-1041 (1962). a. Petitioner's Explanation
Petitioner contends that her source of funds for the alleged loans was a $ 212,000 cash hoard she received from her parents. According to petitioner, her father had $ 212,000 in cash in a safe in his home. Petitioner contends that shortly before her father died, her brother told her about the safe. She contends that she, her brother, and her daughter Janice opened the safe *518 in her parents' house, saw the cash, but did not count it because probate auctioneers were in the house at the time. Petitioner claims that she and her daughter drove back to Springfield with the safe and counted the cash at her home. She asserts that she used some of the money, but left most of it in the safe. She knew that interest rates were at least 15 percent at that time. Petitioner claims that $ 150,000 to $ 180,000 remained in the safe when she began to work at Ken's Appliance in June 1980. Petitioner asserts that she began lending money to Ken Spellman for his business 3 weeks after she started to work for him, and that she continued to lend money to him for the next 3-1/2 years. Petitioner claims that Ken Spellman told her to conceal the fact that she was writing checks to herself by charging them to payroll. She testified that her husband warned her not to do that and so she charged the checks to inventory suppliers. According to petitioner, Ken Spellman initially paid her 12-percent interest, but later gave her 1 or 2 days off each week in lieu of interest. Ken Spellman signed most of the checks which petitioner claims were loan repayments. Petitioner claims *519 that Ken Spellman directed her to record the payments on the business books as paid to inventory suppliers. b. Analysis of Petitioner's Cash Hoard Claim and Her Claim That She Made Loans to Ken Spellman
Petitioner's parents had little or no opportunity to accumulate a cash hoard as large as the one petitioner claims she found. Petitioner's father had a 25-year-old car and a pension of $ 34.69 per month when he died. The value of his estate was $ 13,216.25. Petitioner's daughter and brother did not corroborate petitioner's claim that her parents were afraid of banks or that they kept large amounts of cash in their home. Petitioner testified that her father told her brother about the cash hoard in the safe before he died, and that she discussed the cash hoard with her brother. Petitioner's brother testified that he did not discuss the alleged cash hoard with his father. Petitioner testified that her brother and daughter were present when she opened the safe. Petitioner's brother denied knowing that his parents had a safe, and petitioner's daughter denied being with her mother when a safe was opened. Petitioner's brother testified that he never saw more than about $ 1,000 *520 cash in the house at one time. Petitioner testified that her brother knew that she received the cash hoard and that she and her brother spoke with the probate attorney about the cash hoard. Petitioner's brother testified that he did not know about the cash hoard and that he shared equally with petitioner in his father's inheritance. We found petitioner's brother to be a credible witness. Petitioner testified that she telephoned the probate attorney to tell him about the cash after she returned to Springfield to ask what she should do with it. Petitioner claims that the attorney told her not to worry about reporting the money for probate purposes. She testified: "He asked me how many people knew about it. He asked me were they all in agreement. He said that some of the forms had been filed, and as far as he was concerned that I never did tell him, and just let it go. So I kept my safe in my little closet until I moved." We do not believe that petitioner's father's probate attorney advised her and her brother to omit estate assets from the probate inventory. We note that the probate attorney amended the probate inventory to include a relatively small bank account discovered *521 after she claims to have found the alleged safe. Petitioner certified that her father's probate inventory was correct 2 months after she claims to have spoken to the probate attorney about the cash hoard. Petitioner's daughter initially supported petitioner's cash hoard claim in an interview with respondent's agents. However, she contradicted her mother in testimony at petitioner's criminal trial and this trial. Petitioner testified that her daughter was with her when they found the safe, put the safe in the car, and counted the money. Petitioner's daughter testified that she did not go with her mother to Shreveport, see substantial sums of money in her grandparents' house, or ever witness her mother finding a cash hoard like the one petitioner describes. Petitioner contends that respondent's agent coerced her daughter into changing her testimony, such as by threatening that she could lose her job. Petitioner's daughter testified that she disliked respondent's agent's approach, but that she was not afraid of losing her job. Contrary to petitioner's contention, we believe her daughter first made false statements to defend her mother but then decided to tell the truth. Petitioner *522 was astute in financial matters. She testified that she had notes for the loans which Ken Spellman kept in his safe. However, at trial, she had no notes or other evidence of the alleged loans. We do not believe that petitioner would have lent money without having notes in her possession or taking some other action to secure repayment. Petitioner claims she distrusted banks. We find this to be incredible because she regularly used banks for her personal finances. Petitioner borrowed money from her bank many times at rates of interest around 15 percent. She paid more than $ 8,000 in interest on loans from 1981 to 1984. Petitioner contends that she borrowed the money to maintain a good credit rating. We doubt that she would do this if she had the cash hoard that she claims. Evidence of borrowing supports an inference that she had no cash hoard because a cash hoard negates the necessity to borrow. Thomas v. Commissioner, 223 F.2d 83, 88 (6th Cir. 1955), revg. and remanding a Memorandum Opinion of this Court dated Oct. 30, 1953; see Holland v. United States, 348 U.S. 121, 133 (1954) (taxpayers would not have lost *523 possession of their cafe and furniture and accumulated unpaid debts if they had had a cash hoard of $ 104,000). Petitioner said Ken Spellman initially paid her interest but later gave her days off in lieu of interest. However, she reported no interest income from the purported loans to Ken Spellman at any time the loans were allegedly in effect. Acceptance of petitioner's version of events would require us to believe that she was untruthful with others. For example, she testified that she went along with Ken Spellman's desire to hide the loan repayments in the books by falsely recording payments to her as payments to inventory suppliers. Second, she claimed she hid the safe from probate auctioneers and that she signed a probate inventory which did not include the claimed cash hoard. Petitioner argues that the Spellmans would have discovered her scheme if she had embezzled the money. She also argues that Ken's Appliance needed funds. However, we do not believe petitioner had the funds she claims she lent to Ken Spellman from a cash hoard or from any other source. Thus, the payments to her could not be loan repayments. For the foregoing reasons, we sustain respondent's determination *524 that petitioner received but failed to report income of $ 4,036.04 in 1980, $ 50,290.97 in 1981, $ 46,485.03 in 1982, $ 40,625 in 1983, and $ 34,500 in 1984. 2. Additions to Tax for Fraud Under Section 6653(b)
Respondent determined that petitioner is liable for additions to tax for fraud under section 6653(b) for 1980 and 1981, and section 6653(b)(1) and (2) for 1982, 1983, and 1984. The existence of fraud is a question of fact to be resolved by consideration of the entire record. Parks v. Commissioner, 94 T.C. 654, 660 (1990); Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Respondent has the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). First, respondent must prove the existence of an underpayment. Parks v. Commissioner, supra.To prove fraud, respondent may not rely on the taxpayer's failure to carry the burden of proof as to the underlying deficiency. Id. at 660-661; Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989); *525 Estate of Beck v. Commissioner, 56 T.C. 297, 363 (1971). Second, respondent must show that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent tax collection. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Parks v. Commissioner, supra at 661; Rowlee v. Commissioner, 80 T.C. 1111 (1983). a. Underpayment
Respondent may prove an underpayment where the taxpayer alleges a nontaxable source by disproving the alleged source. United States v. Massei, 355 U.S. 595 (1958); Parks v. Commissioner, supra.
Petitioner alleges that she received a cash hoard from her father. The testimony of petitioner's daughter and brother clearly shows that petitioner's story is a fabrication. Respondent has proven by clear and convincing evidence that petitioner did not have the cash hoard as claimed. Thus, respondent disproved petitioner's alleged nontaxable source of funds. Petitioner received the funds as determined by respondent. *526 She was the bookkeeper. She entered false payees in the check register for checks payable to her. The canceled checks payable to her disappeared while petitioner was the bookkeeper. Petitioner deposited the checks in her bank account. Petitioner did not report any of the deposits. Therefore, we conclude that respondent has proven an underpayment of tax. b. Fraudulent Intent
Respondent must also prove by clear and convincing evidence that petitioner intended to evade a tax known to be owing. Parks v. Commissioner, 94 T.C. at 664. For purposes of section 6653(b), fraud means "actual, intentional wrongdoing", Mitchell v. Commissioner, 118 F.2d 308, 310 (5th Cir. 1941), revg. 40 B.T.A. 424 (1939), or the intentional commission of acts specifically to evade a tax believed to be owing, Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. T.C. Memo. 1966-81; McGee v. Commissioner, 61 T.C. 249, 256 (1973), affd. 519 F.2d 1121 (5th Cir. 1975). Fraud may be inferred *527 from any conduct, the effect of which is to mislead or conceal, Spies v. United States, 317 U.S. 492, 499 (1943), or otherwise prevent the collection of taxes, Webb v. Commissioner, supra at 377. Petitioner understated her income by more than $ 175,000 during a 4-year period. She made false entries in the check journals, thus hiding the payments that she made to herself. Petitioner's explanations are inconsistent and implausible. She tried to conceal the truth by attempting to have her daughter corroborate the cash hoard story for respondent's agents. Thus, she did not cooperate with respondent's agents in their investigation. The fact that petitioner encouraged Mrs. Spellman to become more active in the business bookkeeping does not change our conclusion. We are convinced that petitioner improperly arranged these payments to herself and willfully intended to evade taxes. Accordingly, we hold that petitioner is liable for additions to tax for fraud under section 6653(b) and that all of the deficiencies are due to fraud. 3. Substantial Understatement of Tax Under Section 6661(a)
Respondent determined *528 that petitioner is liable for the addition to tax for substantial understatement of income tax under section 6661. If assessed after October 21, 1986, the addition is 25 percent of any underpayment attributable to the understatement. Sec. 6661(a); Pallottini v. Commissioner, 90 T.C. 498 (1988). A substantial understatement is one which exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1). An understatement, for purposes of this addition to tax, is the amount by which the amount required to be shown on the return exceeds the amount actually shown on the return. Sec. 6661(b)(2); Tweeddale v. Commissioner, 92 T.C. 501, 505 (1989); Woods v. Commissioner, 91 T.C. 88, 94 (1988). If a taxpayer has substantial authority for the tax treatment of any item on the return, the understatement is reduced by the amount attributable thereto. Sec. 6661(b)(2)(B)(i). Similarly, the amount of the understatement is reduced for any item adequately disclosed either on the taxpayer's return or in a statement attached to the return. Sec. 6661(b)(2)(B)(ii). *529 Petitioner has no authority for her failure to report her cash income, nor did she disclose any facts pertaining to the income on her returns or in an attached statement. Therefore, the addition is not reduced by section 6661(b)(2)(B). Respondent may waive the addition if the taxpayer shows reasonable cause for the understatement and that the taxpayer acted in good faith. Sec. 6661(c). Petitioner did not offer any evidence to prove reasonable cause or a good faith misunderstanding. Accordingly, we hold that petitioner is liable for additions to tax under section 6661(a). 4. Admission Into Evidence of Certified Copy of Employment Card
The Court admitted a copy of the employment card of petitioner's father which was certified by the city of Shreveport. The employment card was maintained by the city of Shreveport's Parks Department. It showed petitioner's father's positions, salary, and employment and retirement dates. Petitioner argues that the card is hearsay and was not properly authenticated. This card qualifies for admission under an exception to the hearsay rule because it is a record of a public office which sets forth office activities. Fed. R. Evid. 803(8)(A). *530 The card is self-authenticating because it was certified by the city of Shreveport. Fed. R. Evid. 902(4). Therefore, we conclude the card was properly admitted at trial. Even if the card were not admitted, we would conclude respondent has clearly and convincingly shown that petitioner did not get a $ 212,000 cash hoard from her parents' house. To reflect the foregoing, Decision will be entered for respondent. Footnotes
1. Sec. 6653(b) for 1980 and 1981.↩
2. Fifty percent of the interest due on the deficiencies for 1982 and 1983, and on $ 12,155 of the deficiency for 1984.↩